# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID URBAN, JANE LINK, GERALD MACKRELLA and FAIR HOUSING PARTNERSHIP OF GREATER PITTSBURGH, | |
| Plaintiffs, | Civil Action No.: 2:22-cv-938 |
| v. | |
| BOROUGH OF WEST VIEW, PENNSYLVANIA, | Electronically Filed |
| Defendant. | |

## VERIFIED COMPLAINT

## I.     PRELIMINARY STATEMENT

1.      Plaintiffs David Urban, Jane Link, Gerald Mackrella, and the Fair Housing Partnership of Greater Pittsburgh (collectively "Plaintiffs") bring this civil rights action to remedy unlawful discrimination on the basis of disability by the Borough of West View, Pennsylvania ("West View" or "Defendant").

2.      Plaintiffs Urban, Link, and Mackrella are residents of the Borough of West View, and each has a disability that substantially limits their ability to walk long distances.

3.      As a result of their disability, each of the Plaintiffs needs access to a handicap parking space in front of their home, in order to have meaningful access to the on-street parking in front of their homes, which allows them to have full use and enjoyment of their homes.

4.      Because of this need for access to an on-street parking spot in front of their homes, Plaintiffs Urban, Link and Mackrella each submitted applications to the Borough of West View for a "handicap parking permit," in accordance with the procedural requirements of West View's Ordinance No. 1503 "Establishing Criteria as to the Issuance of Handicap Parking Permits within the Borough" ("Ordinance 1503"). Each of these applications included evidence that the Plaintiff had been issued a handicapped license plate or a disabled veteran license plate by the Pennsylvania Department of Transportation as well as written verification by the Plaintiff's treating physician as to the need for this accommodation.

5.      Defendant West View denied each of the Plaintiffs' requests for a handicap parking permit because the Plaintiffs did not have one of three particular disabilities enumerated in Ordinance 1503, which, on its face, prohibits the issuance of a handicap parking permit unless:

        i. The applicant is wheelchair bound;

        ii. The applicant has severe cardiopulmonary insufficiency requiring the use of ambulatory oxygen;

        iii. The applicant requires use of a prosthetic device(s) that restricts normal ambulation; and/or

        iv. The person requesting the permit is caring for a person who meets one of the criteria of (i), (ii) and/or (iii).

6.      In denying two of the applications, West View also referenced the categorical prohibition codified in Ordinance 1503 against granting handicap parking permits to applicants who have off-street parking, despite verifications provided from these Plaintiffs' treating

physicians stating that access to on-street parking in front of the home was necessary due to their mobility impairments.

7.      In denying one of the applications, West View also referenced the categorical prohibition codified in Ordinance 1503 against "more than one (1) handicapped parking space . . . on any block where parking is permitted on only one side of the street" or "more than two (2) handicapped parking spaces . . . on any block where parking is permitted on…both sides of the street."

8.      Having been denied this important accommodation by Defendant West View, Plaintiffs Urban, Link, and Mackrella each connected with the Fair Housing Partnership of Greater Pittsburgh, which investigated these denials and attempted to assist Plaintiffs in engaging West View to reconsider their accommodation requests, to no avail.

9.      As set forth more fully herein, the Plaintiffs allege that Defendant West View engaged in a pattern or practice of unlawful discrimination by knowingly and intentionally denying Plaintiffs Urban, Link, and Mackrella meaningful access to the on-street parking in front of their homes, which had the effect of inhibiting each Plaintiffs' full use and enjoyment of their homes, and by failing to grant these Plaintiffs the reasonable accommodation of an accessible on-street parking space near their homes.

10.     Plaintiffs further allege that Ordinance 1503, both on its face and as applied by the Defendant, unlawfully discriminates against individuals with certain types of mobility-impairing disabilities when compared to the subgroups of individuals with disabilities enumerated in Ordinance 1503.

11.     Defendant's Ordinance 1503, on its face and as applied by the Defendant, has rendered West View's on-street parking in residential neighborhoods unavailable to people with certain categories of mobility-impairing disabilities.

12.     The Plaintiffs bring this action pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and its implementing regulations ("Section 504"); Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., and its implementing regulations ("ADA"); and the Fair Housing Act, 42 U.S.C. §3601 *et seq.*, and its implementing regulations ("FHA").

13.     Defendant West View's violations of these federal civil rights laws have thwarted Congress's intent to eradicate discrimination against people with disabilities and to ensure that people with disabilities can reside in integrated settings.

14.     The Plaintiffs seek declaratory relief, injunctive relief, and damages for Defendant's discrimination.

## II.     **JURISDICTION AND VENUE**

15.     This court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 2201, 2202, and 42 U.S.C. §3613

16.     Venue is proper in this district under 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to the claims occurred within this District and because Defendant operates, conducts business, and performs official duties therein and thus reside there for purposes of venue.

## III.     **PARTIES**

17.     Plaintiff David Urban is a 77-year-old U.S. military veteran and resident of the Borough of West View.  He owns his home and resides with his wife, who, along with their daughter, assists Mr. Urban with his mobility.  Due to complications related to heart issues and successive strokes, Mr. Urban is unable to walk without assistance and, when walking with assistance, has difficulty walking even short distances, especially over uneven terrain.

18.     Plaintiff Jane Link is a 62-year-old resident of West View, who owns her home and resides with her husband. Ms. Link has psoriatic arthritis and spinal stenosis, which often severely limit her ability to walk.  Ms. Link's home has no off-street parking and is accessible only from the front. Due to her psoriatic arthritis and spinal stenosis, Ms. Link needs to park in a space that is close to her home; otherwise, these impairments inhibit her ability to walk from her car to her front door.

19.     Plaintiff Gerald Mackrella is a 63-year-old homeowner and resident of West View.  Mr. Mackrella has arthritis in his knees and has suffered a heart attack and stroke. Mr. Mackrella's arthritis requires periodic cortisone shots, without which he cannot walk any distance.  Although Mr. Mackrella has an alley and parking pad in the rear of his home, using this parking pad requires him to traverse approximately 14 stairs and a narrow, sloped walkway to reach his home. Due to his medical conditions, Mr. Mackrella is unable to safely climb the stairs and sloped walkway behind his home and can only manage to walk the short distance between the street parking in front of his home and his front door.

20.     Plaintiff Fair Housing Partnership of Greater Pittsburgh (FHP) is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 2840 Liberty Avenue, Suite #205, Pittsburgh, PA. FHP is a full-service fair housing organization that ensures equal housing choice through education, fair housing analysis,

testing, outreach, and community organizing in western Pennsylvania. FHP engages in activities to identify barriers to fair housing in western Pennsylvania, and to counteract and eliminate any such discriminatory practices. FHP also takes steps necessary to protect the rights of individuals in regards to housing choice. Many individuals bring complaints of housing discrimination to FHP. FHP counsels these individuals on the options available to them to obtain access to housing and refers them to appropriate government and community agencies for assistance. In addition, FHP advocates on behalf of individuals in administrative complaints.

21.     Defendant West View is, and at all times relevant to this action was, a municipal corporation organized under the laws of the Commonwealth of Pennsylvania.

22.     At all times relevant to this action, Defendant West View acted pursuant to its duly authorized employees, who acted within the scope of their employment.

23.     At all relevant times, Defendant West View has been a public entity within the meaning of Title II of the ADA.

24.     Defendant West View has and continues to receive federal financial assistance within the meaning of the Rehabilitation Act, including but not limited to federal grant funds under the Community Development Block Grant Program and the American Rescue Plan Act.

25.     Defendant West View provides, maintains, controls, and regulates on-street parking throughout the Borough of West View, including by issuing handicap parking permits to applicants and, upon approval, erecting as close as possible to their place of residence a sign or signs indicating that such place is reserved for persons with disabilities and that no parking is allowed by individuals without disabilities.  *See* Borough of West View Ordinance 1503,

attached hereto as Exhibit 1; *see also* Borough of West View, Article III Parking Regulations,

available at https://ecode360.com/16012541.

## IV.    FACTS

**West View's Ordinance 1503**

26.     Defendant West View enacted Ordinance 1503 in 2019.

27.     Ordinance 1503 regulates West View's process and criteria for issuing "handicap

parking permits" to applicants with disabilities. See Exhibit 1.

28.     If approved, the "permit" results in West View erecting "as close as possible to

their place of residence" a sign or signs indicating that such place is reserved for persons with

disabilities and that no parking is allowed by others who are not individuals with disabilities.

*Ibid.*

29.     A handicap parking permit issued pursuant to Ordinance 1503 does not create an

assigned parking spot for the applicant. Rather, when the permit is approved, West View erects a

handicap parking spot as close as possible to, though typically directly in front of, the home of

the applicant, but this spot may be used by any individual with a handicapped license placard or

license plate or a disabled veteran license plate.  *Ibid.*

30.     Under Ordinance 1503, any resident of West View with a handicapped license

placard or license plate or a disabled veteran license plate may apply for a handicap parking

permit by filling out an application with the West View Police Department. *Ibid.*

31.     However, as stated in Ordinance 1503, West View will only approve an application for a handicap parking permit if the applicant has one of three enumerated disabilities or is caring for someone with one of these enumerated disabilities:

> i. The applicant is wheelchair bound;
>
> ii. The applicant has severe cardiopulmonary insufficiency requiring the use of ambulatory oxygen;
>
> iii. The applicant requires use of a prosthetic device(s) that restricts normal ambulation; and/or
>
> iv. The person requesting the permit is caring for a person who meets one of the criteria of (i), (ii) and/or (iii).

32.     Ordinance 1503 also proscribes, without exception, that West View will issue "[n]o more than one (1) handicapped parking space . . . on any block where parking is permitted on only one side of the street" and "[n]o more than two (2) handicapped parking spaces . . . on any block where parking is permitted on…both sides of the street." *Ibid.*

33.     Ordinance 1503 designates and vests "the Police Chief or his designee" with the responsibility to adjudicate and render final determinations on applications for on-street disability designated parking spaces in West View.  *Ibid.*

34.     Communications from the Police Chief to the Plaintiffs and the public indicate that Defendant West View intentionally limits the number of handicap parking permits that are issued within the borough.

35.     For example, when West View denied Plaintiff Mackrella's first application for a handicap parking spot in 2015, the Police Chief informed Mr. Mackrella that "[a]s a result of the extreme limited parking within the borough[,] [w]e are not issuing handicapped spots at this time unless someone is debilitated to the point of a wheel chair. . . . If we honored every request for

handicapped parking we would literally have handicapped parking spots covering 80% of our roadways."

36.     Communications from the Police Chief to the Plaintiffs and the public indicate that West View intentionally enacted Ordinance 1503 in order to codify its practice of limiting or curbing the number of disability designated street parking spots within the borough.

37.     For example, at a 2018 Town Council Meeting, the West View Police Chief told a West View resident who complained about the presence of a handicap parking spot on the street in front of his home that "no handicap spaces have been issued since 2014" and that he "has been talking to the Solicitor on an ordinance regarding this situation." Ordinance 1503 was enacted the following year.

**West View's Denial of David Urban's Requests for a Handicap Parking Permit**

38.     Plaintiff David Urban resides in West View in a home that he purchased with his wife in 1975.

39.     A United States veteran, Mr. Urban had always been able to climb the approximately 15 stairs necessary to reach his home from the street curb in front of his property, until the late 2000s when he experienced a series of health issues.

40.     Mr. Urban suffered three strokes between approximately 2016 and 2020. Due to a bladder infection caused by the most recent stroke, Mr. Urban uses a catheter and urine bag.

41.     Mr. Urban was diagnosed with chronic heart dysfunction in or around 2016 and chronic kidney dysfunction in or around 2019, which requires daily in-home dialysis.

42.     These medical conditions severely limit Mr. Urban's mobility, such that he can no longer walk without assistance and even with assistance cannot walk any sustained distance or over uneven terrain.  When Mr. Urban needs to move, he does so by using a walker or by using a motorized stair lift and often with hands-on assistance from his wife or daughter, who visits regularly.

43.     As a result of Mr. Urban's limited mobility, he applied for and obtained a "Persons with Disabilities Registration Plate" from the Pennsylvania Department of Transportation ("PennDOT"). This license plate qualifies Mr. Urban to park in areas reserved for persons with a disability in all 50 states of the United States. *See*

*https://www.dmv.pa.gov/Information-Centers/Business-Partner/Pages/Parking-Placards.aspx.*

44.     To help him maintain his independence and his residency in his home, the U.S. Department of Veterans Affairs ("VA") provided Mr. Urban with stair lifts to manage both the stairs from his curbside to the entry of his home and the stairs between the first and second floors of his home.

45.     The VA also provided graduated, wraparound aluminum ramping to enable Mr. Urban to avoid the few stairs at the entry of his home without having to traverse too steep of a grade.

46.     With the help of his wife and daughter, Mr. Urban is able to get to his doctors' visits and other business outside of the home.

47.     In order to get from his car to his home, Mr. Urban parks his car at the curb directly in front of his outdoor stair lift; his wife or daughter assists him out of the car and onto

the stair lift; and they assist him, with the help of his walker, up the graduated ramp and into the home.

48.     While Mr. Urban's home has a driveway in front of the home, he is unable to walk the terrain between his driveway and his outdoor chair lift, which includes a sloped driveway and a grass path. Instead, Mr. Urban relies upon the availability of on-street parking at the curb directly in front of his outdoor chair lift.

49.     When this parking space is occupied, Mr. Urban is unable to leave his home.

50.     Due to his medical conditions and the consequent need for access to parking that is adjacent to his outdoor stair lift, on or about June 12, 2019, Mr. Urban applied to West View for a "handicap parking permit."

51.     When he submitted his application, Mr. Urban completed all elements of the application and satisfied all of the procedural requirements of Ordinance 1503, including presenting evidence of his Pennsylvania-issued disability license plate.

52.     As required, Mr. Urban also attached to the application a signed verification from his treating physician, attesting to his need for a disability designated parking space directly in front of his outdoor chair lift.

53.     In reviewing Mr. Urban's application for the accommodation, West View never engaged a physician to evaluate the necessity of his request.

54.     West View never in any way challenged the veracity or accuracy of the attestation provided by Mr. Urban's treating physician.

55.     Nevertheless, Defendant West View denied Mr. Urban's request, referencing, during West View's onsite visit, the fact that Mr. Urban's property contains a driveway and garage.

56.     Again, Mr. Urban could not and cannot traverse his sloped driveway or the grassy, uneven path from his driveway to his stair lift due to the distance and uneven terrain, especially in inclement weather, which Mr. Urban explained to West View during the onsite visit.

57.     Mr. Urban cannot and does not utilize his garage to enter or exit his home, as there is no chair lift connecting his living space to his basement and garage.

58.     Mr. Urban's treating physician also had explained the need for on-street parking adjacent to Mr. Urban's outdoor stair lift in the verification submitted to West View.

59.     Although he does not use a wheelchair or rely on ambulatory oxygen or a prosthetic device, Mr. Urban's limited mobility is readily apparent, as is the nexus between his limited mobility and his need for the stair lift installed on his exterior stairs.

60.     FHP worked with and on behalf of Mr. Urban to try to redress Defendant West View's discriminatory policy and practices, including by assisting Mr. Urban in submitting an administrative complaint to the U.S. Department of Housing and Urban Development to challenge West View's denial of his accommodation request. This complaint remains pending. Conciliation in that forum has not progressed, nor has a hearing been scheduled.

61.     Defendant's policy, practice, and pattern of denying handicap parking permits to individuals with certain types of mobility-impairing disabilities, like Plaintiff Urban, frustrates FHP's mission of ensuring equal housing opportunities in western Pennsylvania.

62.     Defendant's policy, practice, and pattern of denying these permits to otherwise-qualified individuals who have off-street parking, even when that off-street parking is not accessible to the individual due to their disability, as with Mr. Urban, also frustrates FHP's mission of ensuring equal housing opportunities in western Pennsylvania.

63.     Defendant's policy, practice, and pattern of failing to provide reasonable accommodations when requested by otherwise-eligible applicants who are seeking a handicapped parking permit, or to even engage in a reasonable accommodation review process, as was the case with Mr. Urban, frustrates FHP's mission of ensuring equal housing opportunities in western Pennsylvania.

64.     In attempting to redress Defendant's discriminatory policies and practices on behalf of Mr. Urban, FHP had to divert its limited resources, including resources that would have otherwise been used for fair housing analysis, outreach, community organizing, testing, or other activities.

**West View's Denial of Jane Link's Requests for a Handicap Parking Permit**

65.     Plaintiff Jane Link lives in West View in a home that she purchased with her husband in 1983.

66.     In 2011, Ms. Link was diagnosed with psoriatic arthritis.

67.     Psoriatic arthritis is a degenerative impairment that substantially limits Ms. Link's ability to walk and causes her significant pain in her joints, hips, feet, back, and neck.

68.     Ms. Link's psoriatic arthritis continues to degenerate.

69.     Ms. Link was also diagnosed with spinal stenosis. This condition causes her pain when walking or standing, often severe pain.

70.     Ms. Link has received periodic cortisone shots and infusions, and recently began receiving injectable treatments to help relieve the symptoms of these conditions.

71.     Ms. Link's medical conditions often limit her ability to walk. She can only walk short distances and thus needs to park close enough to her house so that there is only a short distance between her car and her front door.

72.     As a result of Ms. Link's limited mobility, she applied for and obtained a Persons with Disabilities Registration Plate from PennDOT. This license plate qualifies Ms. Link to park in areas reserved for persons with a disability in all 50 states of the United States.

73.     Ms. Link is gainfully employed and uses a car as her main form of transportation.

74.     Ms. Link's home has no access to off-street parking or any other forms of parking besides on-street parking.

75.     Ms. Link lives on a street where street parking is only available on one side of the road.

76.     There are no disability designated parking spaces on Ms. Link's street.

77.     Ms. Link is often unable to park close to her home because the street parking spaces closest to her door are regularly taken by other cars.

78.     When Ms. Link cannot find a parking space close to her home, she must walk long distances to reach her front door.

79.     Walking these distances is very difficult for Ms. Link, especially in the winter or during inclement weather, and it is exceedingly difficult when her psoriatic arthritis and/or stenosis is inflamed.

80.     Street parking near her door is least accessible in the evenings and on weekends, leading Ms. Link to avoid leaving her home if she knows she must arrive back to her home at these times.

81.     Due to her medical conditions, which impact Ms. Link's ability to walk, including her ability to walk from her car to her front door, Ms. Link applied to the Borough of West View for a "handicap parking permit" in or around 2018, 2019, and 2020.

82.     Defendant West View denied each of Ms. Link's applications for a handicap parking permit, most recently in 2020.

83.     In her 2020 application, Ms. Link completed all necessary paperwork in accordance with the procedural requirements of Ordinance 1503, including providing a written verification from her rheumatologist of the need for the designated parking space and evidence of her Pennsylvania-issued disability placard and license plate.

84.     In denying Ms. Link's 2020 application for the accommodation, West View never engaged a physician to evaluate the necessity of her request.

85.     West View never in any way challenged the veracity or accuracy of the attestation provided by Ms. Link's treating physician.

86.     When Ms. Link spoke by phone with West View to question the 2020 denial, she

was informed that West View was checking on the number of disability designated parking

spaces already issued in the borough.

87.     On a separate call with West View, Ms. Link was informed that her request would

not be granted unless she was wheelchair bound. The borough employee suggested that Ms. Link

obtain a wheelchair in order to satisfy the borough's requirement.  The borough employee

indicated that the borough would not verify whether she actually uses a wheelchair so long as she

demonstrated that she possessed one.

88.     FHP worked with and on behalf of Ms. Link to try to redress Defendant's

discriminatory policy and practices, including by assisting Ms. Link in submitting an

administrative complaint to the U.S. Department of Housing and Urban Development to

challenge West View's denial of her accommodation requests. This complaint remains pending.

Conciliation in that forum has not progressed, nor has a hearing been scheduled.

89.     Defendant's policy, practice, and pattern of denying handicap parking permits to

individuals with certain types of mobility-impairing disabilities, like Ms. Link, as well as

Defendant's failure to provide reasonable accommodations when requested by otherwise-eligible

applicants who are seeking a handicapped parking permit, or to even engage in a reasonable

accommodation process, as with Ms. Link, frustrates FHP's mission of ensuring equal housing

opportunities in western Pennsylvania.

90.     In attempting to redress Defendant's discriminatory policies and practices on

behalf of Ms. Link, FHP had to divert its limited resources, including resources that would have

otherwise been used for fair housing analysis, outreach, community organizing, testing, or other activities.

**West View's Denial of Mr. Mackrella's Requests for a Handicap Parking Permit**

91.     Plaintiff Gerald Mackrella lives in West View in the home where his parents lived, which he purchased from his parents in 1989.

92.     His street, which slopes down the side of a hill, has on-street parking that is limited to only one side of the street.

93.     Mr. Mackrella has chronic, sometimes debilitating arthritis in his knees, for which he receives periodic cortisone shots that enable him to walk. He also has arthritis in his lower back.

94.     Mr. Mackrella also suffers from degenerative coronary artery disease, pulmonary hypertension, and congestive heart failure, which limit his ability to walk long distances or otherwise endure strenuous walking.

95.     Mr. Mackrella had a heart attack in 2017 and a stroke in 2018.

96.     Mr. Mackrella's heart attack and stroke compounded the mobility impairments caused by his long-term disabilities. Mr. Mackrella's stroke also causes him to suffer significant balance issues.

97.     As a result of Ms. Mackrella's limited mobility, he applied for and obtained a Persons with Disabilities Registration Plate from PennDOT. This license plate qualifies Mr. Mackrella to park in areas reserved for persons with a disability in all 50 states of the United States.

98.     In years past, the limited parking and sloped terrain of Mr. Mackrella's street did not bother him, in part because he had access to a parking pad via an alley in the rear of his home. To get to his home from this parking pad, Mr. Mackrella would climb approximately 14 stairs and a narrow, sloped walkway connecting the parking pad and back yard to his house.

99.     Due to the mobility issues caused by his medical conditions, these days, Mr. Mackrella cannot walk the path from his parking pad to the entrance of his home. Instead, Mr. Mackrella relies on having access to street parking directly in front of his home.

100.     Due to the limited mobility caused by these medical conditions, Mr. Mackrella applied to the Borough of West View for a "handicap parking permit" on multiple occasions between approximately 2015 and 2020. Each time he was denied.

101.     In his most recent application to West View for a handicap parking permit, Mr. Mackrella satisfied all of the procedural requirements of Ordinance 1503, including presenting evidence of his Pennsylvania-issued disability placard and license plate and submitting a signed verification from his treating physician attesting to his need for a disability designated parking space in front of his home.

102.     In reviewing Mr. Mackrella's application for the accommodation, West View never engaged a physician to evaluate the necessity of the request.

103.     West View never in any way challenged the veracity or accuracy of the attestation provided by Mr. Mackrella's physician.

104.     Nevertheless, West View denied Mr. Mackrella's request on the grounds that Mr. Mackrella was not wheelchair confined, did not require the use of ambulatory oxygen, and did not require the use of a prosthetic device(s) that restricts normal ambulation.

105.    In denying Mr. Mackrella's applications, West View also cited the existence of the off-street parking pad behind Mr. Mackrella's home, which, again, Mr. Mackrella cannot access from his home due the mobility impairments caused by his disabilities.

106.    Not having a handicap parking permit has significantly impeded Ms. Mackrella's ability to use and enjoy his home. For example, following his stroke in 2018, Mr. Mackrella was prescribed physical therapy sessions outside his home as part of his recovery plan. Because West View denied him a handicap parking permit, Mr. Mackrella could not get from his home to a car, and thus had no ability to get from his home to his physical therapy sessions. As a result, Mr. Mackrella could not remain in his home during the early part of his recovery, and instead was forced to move in with his daughter for approximately two months, so that he could attend his physical therapy sessions. Thus, a direct result of West View denying Mr. Mackrella the reasonable accommodation of a handicap parking permit, was that Mr. Mackrella was forced to move to a different residence for an extended period of time.

107.    FHP worked with and on behalf of Mr. Mackrella to try to redress Defendant's discriminatory policies and practices, including by assisting Mr. Mackrella in submitting an administrative complaint to the U.S. Department of Housing and Urban Development to challenge West View's denial of his accommodation requests. This complaint remains pending. Conciliation in that forum has not progressed, nor has a hearing been scheduled.

108.    Defendant's policy, practice, and pattern of denying handicap parking permits to individuals with certain types of disabilities related to mobility, like Mr. Mackrella, frustrates FHP's mission of ensuring equal housing opportunities in western Pennsylvania.

109.    Defendant's policy, practice, and pattern of denying these permits to otherwise-qualified individuals who have off-street parking when that off-street parking is not accessible to the individual due to their disability, as with Mr. Mackrella, also frustrates FHP's mission of ensuring equal housing opportunities in western Pennsylvania.

110.    Defendant's policy, practice, and pattern of failing to provide reasonable accommodations when requested by otherwise-eligible applicants who are seeking a handicapped parking permit, or to even engage in a reasonable accommodation review process, as was the case with Mr. Mackrella, frustrates FHP's mission of ensuring equal housing opportunities in western Pennsylvania.

111.    In attempting to redress Defendant's discriminatory policies and practices on behalf of Mr. Mackrella, FHP had to divert its limited resources, including resources that would have otherwise been used for fair housing analysis, outreach, community organizing, testing, or other activities.

## V.    CLAIMS FOR RELIEF

### A.  COUNT 1: Violation of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*.

112.    Plaintiffs reallege and incorporate each and every allegation contained in the foregoing paragraphs.

113.    The Americans with Disabilities Act (ADA) was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" with "clear, strong, consistent, enforceable standards . . . in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. §12101(b).

114.    All public entities, including state and local governments and their departments, agencies, and instrumentalities, must comply with the ADA.

115.    The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. §12132.

116.    "Discrimination" under the ADA includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such . . . services, programs or activities . . . to individuals with disabilities . . ." 42 U.S.C. §12182(b)(2)(A).

117.    The ADA also "prohibit[s] discrimination against one 'subgroup' of disabled people as compared to another subgroup if the characteristic distinguishing the two subgroups is the nature of their respective disability." CG v. Pennsylvania Dep't of Educ., 734 F.3d 229, 236 (3d Cir. 2013).

118.    The ADA requires covered entities to provide people with disabilities meaningful access to programs, services, and activities. Crowder v. Kitagawa, 81 F.3d 1480 (9th Cir. 1996) (citing Helen L. v. DiDario, 46 F.3d 325, 335 (3d Cir.)). This meaningful access requirement applies across the board to all of a covered entity's programs, services, and activities. Id.

119.    On-street parking is a city service, program, or activity within the meaning of the ADA, and cities can be liable under the ADA for denying requests for accessible street parking as a reasonable accommodation or modification for disabilities. E.g. Bassilios v. City of Torrance, CA, 166 F. Supp. 3d 1061, 1065 (C.D. Cal. 2015).

120.     The ADA's broad statutory mandate for accessibility requires public entities to make street parking accessible.  *E.g.* <u>Fortyune v. City of Lomita</u>, 823 F. Supp. 2d 1036, 1039 (C.D.Cal. 2011).

121.     Each individual Plaintiff named in this complaint is a qualified individual with a disability within the meaning of the ADA.

122.     Defendant West View is a public entity within the meaning of Title II of the ADA.

123.     By their policies, practices and conduct described herein, Defendant West View discriminated on the basis of disability in violation of the ADA, including by:

     a.  Denying Plaintiffs' requests for accessible on-street parking spaces as a reasonable accommodation or modification to Defendant West View's policies, practices, or procedures, so that Plaintiffs could enjoy the same benefit of curbside parking as a person without a mobility-impairing disability enjoys; and

     b.  Excluding Plaintiffs from, or denying them meaningful access to, Defendant West View's street parking program/service based on the nature of their mobility-impairing disabilities.

**B.  COUNT 2: Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §794 *et seq.***

124.     Plaintiffs reallege and incorporate each and every allegation contained in the foregoing paragraphs.

125.     The purpose of the Rehabilitation Act of 1973 is to "maximize employment, economic self-sufficiency, independence, and inclusion and integration into society" of people

with disabilities. 29 U.S.C. §701(b)(1). The Rehabilitation Act is based on findings that "the goals of the Nation properly include the goal of providing individuals with disabilities with the tools necessary to . . . achieve equality of opportunity, full inclusion and integration in society, employment, independent living, and economic and social self-sufficiency." 29 U.S.C. §701(a)(5) and (6)(B).

126.    All entities receiving federal financial assistance must comply with the anti-discrimination provisions of Section 504 of the Rehabilitation Act. 29 U.S.C. §794(a).

127.    Section 504 states, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. §794.

128.    Section 504 requires covered entities to provide people with disabilities meaningful access to programs and activities. Alexander v. Choate, 469 U.S. 287 (1985). Where the covered entity is a local government, the meaningful access requirement applies broadly to "all of the operations of a department, agency, special purpose district, or other instrumentality of . . . a local government . . . any part of which is extended Federal financial assistance." 29 U.S.C. §794(b).

129.    On-street parking is a program or activity within the meaning of Section 504, and local governments can be liable under Section 504 for denying requests for accessible street parking as a reasonable modification for disabilities. See, e.g. Bassilios, 166 F. Supp. 3d at 1065.

130.    Section 504 not only prohibits discrimination against disabled persons compared to nondisabled persons, but also discrimination against one subgroup of disabled persons as

compared to a different subgroup of disabled persons. *E.g.* CG v. Pennsylvania Dep't of Educ., 734 F.3d at 236.

131.    Each individual Plaintiff named in this complaint is an individual with a disability within the meaning of Section 504.

132.    Defendant is a recipient of federal financial assistance within the meaning of Section 504.

133.    By their policies, practices and conduct described herein, Defendant West View discriminated on the basis of disability in violation of Section 504, including by engaging in the following actions or omissions:

   a.    Denying Plaintiffs' requests for accessible on-street parking spaces as a reasonable accommodation or modification to Defendant West View's programs, services, or activities, so that Plaintiffs could enjoy the same benefit of curbside parking as a person without a mobility related disability enjoys; and

   b.    Excluding Plaintiffs from, or denying them the benefits of, Defendant West View's street parking program/service based on the nature of their mobility-impairing disabilities.

**C.  COUNT 3: Violation of the Fair Housing Act, 42 U.S.C. §3601 *et seq*.**

134.    Plaintiffs reallege and incorporate each and every allegation contained in the foregoing paragraphs.

135.    Congress passed the Fair Housing Act ("the FHA"), as amended in 1988, "to provide, within constitutional limitations, for fair housing throughout the United States."  42 U.S.C. §3601.

136.    It is "unlawful" under the FHA "[t]o discriminate against any person . . . in the provision of services or facilities in connection with [a] dwelling, because of a handicap of that person . . ." 42 U.S.C. §3604(f).

137.    For the purposes of §3604(f), "discrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. §3604(f)(3).

138.    The FHA defines a "handicap" as: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment . . ." 42 U.S.C. §3602(h).

139.    Each individual Plaintiff named in this complaint is an individual with a physical impairment which substantially limits one or more major life activity within the meaning of the FHA, including walking.

140.    By their policies, practices and conduct described herein, Defendant West View discriminated intentionally, recklessly, or with callous indifference on the basis of "handicap" or disability in violation of the FHA, including by:

      a.    Denying Plaintiffs' requests for accessible on-street parking spaces as a reasonable accommodation or modification to Defendant West View's street

parking program/service, when such accommodations were necessary to afford

Plaintiffs an equal opportunity to use and enjoy their dwellings;

b.  Denying Plaintiffs the provision of services in connection with a dwelling because

of their disabilities; and

c.  Denying Plaintiffs meaningful access to their dwellings by excluding Plaintiffs

from, or denying them meaningful access to, Defendant West View's street

parking program/service based on the nature of their mobility-impairing

disabilities.

## VI.   <u>PRAYER FOR RELIEF</u>

141.   WHEREFORE, Plaintiffs respectfully request that the court:

a.  Declare that Defendant West View's Ordinance, policies, practices, acts, and

omissions, as set forth above, violate the ADA, Section 504, and the FHA, and

that Defendant West View's discriminatory conduct, as described above, was

intentional, reckless, and/or taken in callous disregard for the rights of others;

b.  Permanently enjoin Defendant West View from engaging in the conduct

described herein;

c.  Order Defendant West View to take all affirmative steps necessary to remedy the

effects of the conduct described herein and to prevent additional instances of such

conduct or similar conduct from occurring in the future, including by

implementing any policy changes necessary to create a procedure where people

with disabilities have meaningful access to street parking spaces and can request

accessible street parking spaces in a way that requires Defendant West View to consider the individual circumstances of each applicant;

d.   Order Defendant West View to designate a section of the curb outside of each Plaintiff's residence as a disabled street parking space;

e.   Award monetary relief to the Plaintiffs as authorized by law and established in this case, including, compensatory damages to Plaintiffs in an amount to be determined at trial that would fully compensate Plaintiffs for the injuries caused by the conduct of Defendant alleged herein;

f.   Award reasonable attorneys' fees and costs; and

g.   Award such other and further relief as this court may deem just and proper.


Respectfully submitted,

*/s/ Kevin Quisenberry*                                Date: June 27, 2022
Kevin Quisenberry, Esq.
Pa. I.D. #90499
kquisenberry@cjplaw.org

*/s/ Jacqueline Perlow*
Jacqueline Perlow, Esq.
Pa. I.D. #321594
jperlow@cjplaw.org

Community Justice Project
100 Fifth Ave. Suite 900
Pittsburgh, PA 15222
(412) 434-6002

Exhibit 1

Borough of West View's Ordinance 1503

BOROUGH OF WEST VIEW
ORDINANCE NO. 1503

AN ORDINANCE OF THE BOROUGH OF WEST VIEW, ALLEGHENY COUNTY, COMMONWEALTH OF PENNSYLVANIA, ESTABLISHING CRITERIA AS TO THE ISSUANCE OF HANDICAP PARKING PERMITS WITHIN THE BOROUGH.

NOW, THEREFORE, BE IT ORDAINED AND ENACTED, by the Council of the

Borough of West View, Allegheny County, Commonwealth of Pennsylvania, that the

following criteria as to the issuance of handicap parking permits within the Borough of West

shall be adopted:

1. That any handicapped person or severely disabled veteran who desires to have the Borough erect on the highway as close as possible to their place of residence a sign or signs indicating that such place is reserved for a handicapped person or severely disabled veteran, that no parking is allowed by others who are not handicapped or severely disabled, and that any unauthorized person parking there shall be subject to a $50.00 fine, pursuant to the provisions of §3354(d) of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A §3354(d), shall, on an annual basis, make application for the erection of such sign  or signs to the Borough, and which application shall include, but not be limited to,   the following  information:
   A. A vehicle must be registered to a handicapped resident and the vehicle must be driven by the handicapped person, or a family member who also resides at the same address.
   B. A copy of the current special registration plate for one passenger car or other vehicle with a registered gross weight of not more than 9,000 pounds, designating the vehicle so licensed as being used by a handicapped person pursuant to §1338(a) of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. §1338(a).
   C. Verification of one of the requirements listed in Section 3(G)(i) through (iv) of this Ordinance, said proof to be provided, in writing, by one of applicant's treating physicians, with said verification  to be signed by the treating physician.

2. An application or renewal for the erection of a sign or signs from a handicapped person or severely disabled veteran under the provisions of this Section shall be made to the Chief of Police or his designee on an annual basis, which year shall run from January 1st through December 31st of the following year and any applications for the subsequent calendar year must be filed by December 31st of the current calendar year. Otherwise, if new applications or renewal applications for the erection of such signs are not filed with the Chief of  Police or his designee by December 31st of the calendar year, they shall expire on December 31st of that

same calendar year, and shall not be valid for the subsequent calendar year until such time as they can actually be approved by the Chief of Police or his designee. All handicapped parking spaces permitted prior to the effective date of this Ordinance shall be allowed to remain as located but must be renewed annually beginning January 1, 2020.

3. In making the final determination regarding the grant of a new application or the renewal of a previously permitted handicapped space, the Chief of Police or his designee shall apply the following criteria:

    A. No more than one (1) handicapped parking space shall be issued per household.

    B. No more than two (2) handicapped parking spaces shall be located on any block where parking is permitted on only both sides of the street.

    C. No more than one (1) handicapped parking space shall be located on any block where parking is permitted on only one side of the street.

    D. In the event that previously permitted spaces exceed the maximum allowed by block, the Borough, through the Chief of Police or his designee, shall refrain from granting any additional spaces in that block until the number of handicapped spaces falls below the maximum allowed.

    E. No permit shall be granted where adequate handicapped accessible off-street parking is available.

    F. No permit shall be granted if the address does not have a vehicle registered at the address requested.

    G. All applicants must meet at least one (1) of the following requirements, and shall provide verification of the same, in writing, provided by treating physician of applicant by one of applicant's treating physicians, with said verification to be signed by the treating physician:

        i. The applicant is wheelchair bound;

        ii. The applicant has severe cardiopulmonary insufficiency requiring the use of ambulatory oxygen;

        iii. The applicant requires use of a prosthetic device(s) that restricts normal ambulation; and/or

        iv. The person requesting a permit is caring for a person who meets one of the criteria of (i), (ii) and/or (iii).

4. In considering whether or not to grant new applications or renewal applications for the erection of a sign or signs from a handicapped person or severely disabled veteran under the provisions of this Ordinance, the Chief of Police or his designee shall consider the health, safety and welfare of the Borough and shall have the authority to deny such applications, or modify such applications.

5. In the event there is a material improvement in the physical condition of the applicant to the extent that the applicant would no longer qualify under the criteria set forth herein, the special parking privilege shall terminate and be withdrawn and the handicapped parking space shall be removed. Likewise, the

handicapped parking space shall be removed if there is a change in the circumstances such that the handicapped parking space shall no longer be appropriate under the criteria referred to herein. Further, any misstatement, error, incomplete or misleading representation or application or part thereof shall nullify any grant, and the special parking forfeited and parking space removed.

6. A parking spot so designated as being for a handicapped person or severely disabled veteran will be open to anyone with an appropriate plate or placard for their vehicle.

7. Severability. If any provision of this Ordinance or the application thereof to any person or circumstances is held invalid, such holding shall not affect the other provisions or applications of this Ordinance which can be given effect without the invalid provision or application, and to this end, the provisions of this Ordinance are declared severable.

8. All Ordinances or parts of Ordinances which are inconsistent herewith are hereby repealed to the extent of such inconsistency.

9. Effective Date. This Ordinance shall become immediately effective upon the date of execution.

ORDAINED AND ENACTED THIS 14th day of February, 2019.


ATTEST:                                            BOROUGH OF WEST VIEW


_____          _____
Police Chief Bruce A. Fromlak               William F. Aguglia
Borough Secretary                            Council President


Approved as to form:


_____
Mayor John R. Henry

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID URBAN, JANE LINK, GERALD
MACKRELLA and FAIR HOUSING
PARTNERSHIP OF GREATER PITTSBURGH,

          Plaintiffs,           Civil Action No.:

          v.

BOROUGH OF WEST VIEW, PENNSYLVANIA,   Electronically Filed

          Defendant.

## VERIFICATION

    To my knowledge and belief, I verify under penalty of perjury that the foregoing facts set

out in the Verified Complaint are true and correct.

_____          Date: _JUNE 22, 22_

David Urban

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID URBAN, JANE LINK, GERALD MACKRELLA and FAIR HOUSING PARTNERSHIP OF GREATER PITTSBURGH, | |
| Plaintiffs, | Civil Action No.: |
| v. | |
| BOROUGH OF WEST VIEW, PENNSYLVANIA, | Electronically Filed |
| Defendant. | |

## **VERIFICATION**

To my knowledge and belief, I verify under penalty of perjury that the foregoing facts set out in the Verified Complaint are true and correct.

_____                                    Date: 06/17/2022
Jane Link

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID URBAN, JANE LINK, GERALD MACKRELLA and FAIR HOUSING PARTNERSHIP OF GREATER PITTSBURGH, | |
| Plaintiffs, | Civil Action No.: |
| v. | |
| BOROUGH OF WEST VIEW, PENNSYLVANIA, | Electronically Filed |
| Defendant. | |

## **VERIFICATION**

To my knowledge and belief, I verify under penalty of perjury that the foregoing facts set out in the Verified Complaint are true and correct.

*Gerald Mackrella*
7F233FD1A346484...
Gerald Mackrella

Date: 06/17/2022

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID URBAN, JANE LINK, GERALD MACKRELLA and FAIR HOUSING PARTNERSHIP OF GREATER PITTSBURGH, | |
| Plaintiffs, | Civil Action No.: |
| v. | |
| BOROUGH OF WEST VIEW, PENNSYLVANIA, | Electronically Filed |
| Defendant. | |

## **VERIFICATION**

To my knowledge and belief, I verify under penalty of perjury that the foregoing facts set out in the Verified Complaint are true and correct.

DocuSign by:

*Megan Confer-Hammond*

F7A647551A7E4DC...

Date: 06/22/2022

Megan Confer-Hammond
Executive Director
Fair Housing Partnership of Greater Pittsburgh